# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE          )
                           )
    v.                     )          Case No. 2109014922
                           )
VALMIR JOSEPH,             )
                           )
    Defendant.             )

Decided: December 2, 2022

Bridget A. Fassano
Assistant Deputy Attorney General
Carvel State Office Building
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Joseph Hurley, Esq.
1215 North Street
Wilmington, DE 19801
*Attorney for Defendant*

## MEMORANDUM OPINION AND ORDER

**Manning, J.**

1

## FACTUAL AND PROCEDURAL HISTORY

On September 30, 2021, Valmir Joseph ("Defendant") was arrested by Corporal Keith Johnson of the Wilmington Police Department ("Corporal Johnson") for the offense of Driving a Vehicle Under the Influence of Alcohol ("DUI") in violation of 21 *Del. C.* § 4177 and Failure to Obey a Traffic Control Device in violation of 21 *Del. C.* § 4122.

Defendant filed a motion to suppress, arguing that his arrest for DUI was not supported by probable cause. A suppression hearing was held on August 4, 2022. At the hearing, Corporal Johnson described the events surrounding Defendant's arrest as follows. Corporal Johnson testified that he was patrolling the Center City area of Wilmington when he observed a black pickup truck on Martin Luther King Boulevard that was "straddling both lanes" and "not clearly in one lane or another and continued forward in both, failing to maintain its lane." Corporal Johnson saw the truck stop at a red light, and when the light turned green, the truck continued forward still straddling both lanes. He testified that he first noticed the vehicle at Martin Luther King Boulevard and Tatnall Street before it went "a block or two southbound towards Market Street." Corporal Johnson signaled the truck to pull over and conducted a traffic stop.

The State presented video footage taken from Corporal Johnson's body worn camera of the traffic stop. After calling in the stop, Corporal Johnson approached

2

Defendant's vehicle and informed Defendant that he was driving in two lanes. When asked by Corporal Johnson whether he had anything to drink that night, Defendant responds, "No." When he first made contact with Defendant, Corporal Johnson noticed that Defendant's eyes were watery and bloodshot, and a strong odor of alcohol was emanating from Defendant's mouth. Corporal Johnson also noted that Defendant's speech was "low and slurred."

Corporal Johnson asked Defendant to recite the alphabet starting from the letter "E" ending with the letter "P." Initially, Defendant skipped one letter and went past another letter. Then, Defendant paused and asked Corporal Johnson, "starting at E?" After instructing Defendant to start with the letter "E" and end with the letter "P," Defendant "started rattling off random letters that were not in alphabetical order." When Corporal Johnson asked Defendant if he could do the numerical test—counting backwards starting at the number 68 and ending with the number 53—Defendant responded in the negative. Subsequently, Corporal Johnson asked Defendant to step out of the vehicle. When Defendant first stepped out of the vehicle, "he swayed a little bit." After leading Defendant towards the back of the vehicle, Corporal Johnson again asked Defendant if he had been drinking. While Defendant did not give a verbal response, "he nodded his head, yes." But when asked how much he had to drink, Defendant answered, "No, he had not been drinking."

After effectuating Defendant's arrest, Corporal Johnson found an open bottle

3

of tequila on the floorboard of the vehicle that appeared to be "approximately halfway gone."[1] Defendant refused to submit or provide a breath sample for an intoxilyzer test.

At the hearing, the State presented the testimony of Corporal Johnson and entered into evidence the video footage of the events leading up to, during, and after Defendant's traffic stop. Defendant did not present any testimony and did not enter any exhibits into evidence. At the close of the hearing, the Court took the matter under advisement and gave the State thirty days to provide the Court with supplemental briefing on the issue of whether the finding of probable cause for the initial arrest negates or invalidates the subsequent blood draw warrant. Defendant would then have thirty days following the State's submission to respond.

On September 23, 2022, the State filed its Supplemental Brief ("Brief") addressing the issue of whether a finding of no probable cause for the initial arrest would negate or invalidates the subsequent blood draw warrant.[2] Defendant did not file a subsequent response.

---

[1] Because the open bottle of alcohol was found after Defendant was arrested for DUI, its presence in the vehicle forms no part of my decision that probable cause to arrest existed.

[2] Ultimately, I do not find it necessary to reach this issue since I find that the initial arrest was supported by probable cause.

4

## PARTIES CONTENTIONS

Defendant contends that the arrest of Defendant was not based upon a finding of probable cause and argues that the State failed to provide sufficient evidence to prove that Defendant was under the influence by a preponderance of the evidence. Moreover, Defendant argues that the affidavit filed in support of the subsequent search warrant also lacked probable cause.

In response, the State argues that based on the totality of the circumstances, probable cause existed for Defendant's arrest and probable cause existed for a neutral magistrate to issue the search warrant for Defendant's blood draw. Alternatively, the State argues that if the Court finds that there was no probable cause to arrest Defendant, the Court must turn to the search warrant for the subsequent blood draw to determine if there was probable cause for the search.

## LEGAL STANDARD

On a motion to suppress for a warrantless arrest, the State bears the burden of establishing, by a preponderance of the evidence, that the challenged search or seizure was valid under the rights guaranteed by the United States Constitution, the Delaware Constitution, and Delaware statutory law.[3] The Delaware Supreme Court finds that "probable cause to arrest for a DUI offense exists when an officer

---

[3] *State v. Anderson*, 2012 WL 4056130, at *3 (Del. Super. Oct. 14, 2010).

5

possesses information which would warrant a reasonable man in believing that [such] a crime ha[s] been committed."[4] A police officer must present certain facts that when viewed under the totality of the circumstances suggests that there is a fair probability that the defendant has committed a DUI offense.[5]

## DISCUSSION

The Delaware Supreme Court has held that "[w]hen a person operates a motor vehicle in Delaware, he or she is deemed by statute to have given consent to chemical tests, including a test of the breath to determine the presence of alcohol or drugs."[6] However, these tests constitute a search, for which there are certain constitutional protections. Therefore, "before a police officer can require a driver to submit to any chemical test, the police officer must first establish that he had probable cause to believe that the driver was under the influence of drugs or alcohol while operating a motor vehicle."[7] To determine if that requirement was met, the court looks at the totality of the circumstances. "A traffic violation along with an odor of alcohol, standing alone, does not constitute probable cause to arrest the driver

---

[4] *Lefebvre v. State*, 19 A.3d 287, 292–93 (Del. 2011); *Bease v. State*, 884 A.2d 495, 498 (Del. 2005)).
[5] *Id.*

[6] *Bease v. State*, 884 A.2d 495, 497–98 (Del. 2005).

[7] *State v. Cruz*, 2016 WL 3600205, at *3 (Del. Com. Apr. 27, 2016).

6

for a DUI offense."[8] However, if the evidence includes (1)a traffic violation, (2) odor of alcohol, (3) rapid speech, (4) admission to drinking, (5) bloodshot and glassy eyes and, (6) a failed alphabet test, this constitutes probable cause to arrest the driver for a DUI offense.[9]

Here, Corporal Johnson testified that Defendant smelled of alcohol, had slurred speech, had bloodshot and glassy eyes, had difficulty with a simple alphabet test, and informed Corporal Johnson that he was unable to complete the counting test.[10] Additionally, the observation of Defendant's improper driving is further evidence of his possible impairment that the officer properly considered. Finally, Corporal Johnson testified that although Defendant denied drinking alcohol, when told that he smelled like alcohol, Defendant nodded his head in the affirmative. Defendant refused to submit to standardized National Highway and Traffic Safety Administration Standardized Field Sobriety Tests so the results of those tests cannot be considered.

I recognize that these facts are not the strongest in support of probable cause, however, under the totality of the circumstances, they amount to a *fair probability* that Defendant was impaired and were thus sufficient for Corporal Johnson to arrest

---

[8] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).

[9] *Id.*

[10] It is not totally clear from Defendant's answer if he was *unable* to count for some reason or was simply refusing to do the test.

7

Defendant and subject him to further testing.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress is DENIED,

and the case shall proceed to trial as scheduled.

**IT IS SO ORDERED.**

Bradley V. Manning,
Judge

8